On behalf of the Appalachian District, Matthew Sperry. Both sides ready to proceed? Yes, Your Honor. Okay, you may proceed when you're ready. Your Honor, I move there is any motion to set additional authority. Yes. Any objection? No objection. Be granted. Thank you. I have a copy. Thank you, Your Honor. You may please the court. Your Honor, the Fourth Amendment of the United States Constitution was designed to protect the citizens of the United States of America from unreasonable government intrusion. It is therefore the shield that enables each one of us to live a private and secure life from unreasonable searches and seizures. However, in quashing the search warrant in this case, a warrant which included an affidavit which stated sufficient probable cause, the trial court used the shield of the Fourth Amendment as a sword to protect the injured. What's the probable cause that the complaint must allege? I'm sorry, Your Honor. What's your probable cause? Our probable cause in this case is simply what the affidavit saw. The affidavit observed what he described. And how did he describe that? He described what he saw as being three photos, one of them containing two young children, approximately six years of age, two young girls displaying their breasts and vaginas. We would argue that that's probable cause to believe that there is child pornography in the defendant's home. What does displaying mean? Well, Your Honor, I believe search warrants are supposed to be interpreted not in a hyper-technical manner but in a common sense manner. So to me, to at least the affidavit apparently, displaying means in some form an exhibition of the generals in this case. They're being shown. Yes. But, again, I mean, it's sort of that they're being displayed. I mean, that's the word that he's using. I'll put it this way. It's not really that they appeared in the picture. If they appeared in the picture, they would just be innocent photos as maybe the trial court interpreted from the affidavit. But the point is that the affidavit also included the statement that it upset the affiant. Now, I don't think that search warrants should be decided on whether or not, you know, a particular individual's sensibilities are upset. However, in this case, the pictures clearly had an effect on the affiant. Well, then, if that's the case, well, the police officer said he was freaked out by them. The affiant himself said they upset him. Correct. Why? I mean, I get upset by having six oral arguments in a day, you know, because I can't keep that many things in my head. But that doesn't mean I'm not going to do them. Hopefully we're not trying to obtain warrants based on the fact that you're upset about oral arguments and the people who argue in front of you. I know, but upset is a relative term. I didn't like it. It upset my sensibilities. It was over the top. There are no general terms used here. How can I make them more specific based upon the language that's been used? Okay. I think any time that you have this particular language, you have a lewd act. You have probable cause to believe that there is a lewd exhibition. And I think that's precisely what they're trying to do. That's a quantum leap. I'm sorry. Displayed means it's lewd? No. Is that your position? Displaying particularly the generals is an exhibition of those generals. That's your argument? Okay. I mean, that's what the affidavit says. I'm not trying to be more – my argument is this. I don't think that we should be looking at affidavits with such hyper-technical scrutiny. It does require an affidavit to set forth the elements of a crime. Correct, Your Honor. Well, the trial court in this case took from that language the idea that the defendant had in his possession innocent photos of children playing with sprinklers, for example. But that's not what the affidavit described. If he had merely – for example, if the affidavit said, I opened up files on the defendant's computer and I observed photos of children naked playing with sprinklers, that would be, I think, insufficient for probable cause for the offense of child pornography generally. But I think there are certain circumstances where your – But with your example, you just gave a very specific example of what the affidavit would have seen in a photograph. He didn't do that with respect to the pictures he did see. That's – I mean – I mean, at some point, isn't there an obligation to ask the affidavit what is it that you saw? Would we issue a search warrant on a robbery or a burglary without asking for something more than four words? I think – I think – To describe the offender, for example? Okay. I think there's a bit of a difference, though, between saying – for example, if the affidavit had merely come out with the conclusory statement, I saw child pornography, we know that would be insufficient. We're not there. This is probable. What did he see? What he – I'm not going to – I'm not going to say that he saw anything other than what he stated. What he stated, he observed, was two – or, I'm sorry, three young girls displaying their breasts and vaginas. Now, what displaying meant to him, I think, is the same as it means to all of us. If the pictures upset him – all right? And this is somebody who – you know, this is somebody who they listed his prior offenses in the search warrant affidavit, which they weren't compelled to do. But if it upset an affiant who is – has somebody with some familiarity with the criminal justice system, I've got to think that these were at least somewhat pornographic, somewhat lewd. But the question isn't whether, I guess, that they're somewhat lewd. The question is whether or not there's probable cause in the affidavit, whether it's more probably true than not that the images were child pornography. Do you agree that nudity alone is insufficient? I agree – I would say that nudity is insufficient. Lewdness would be sufficient. I said nudity, didn't I? Yes. No, lewdness is what he said. Oh, I meant nudity itself. Nudity isn't sufficient. Correct. And contextually, you let us know what you feel contextually added to the nudity to equate to lewdness or satisfy a lewdness standard. I'm sorry. Contextually, specify the facts that you rely on in addition to nudity to create lewdness. I think the word display, given its common definition, is to make an exhibition of something. So I think to me that dictates that the focal point of these pictures were in fact the generals by use of the word display, or at least that the generals were in some way exhibited in these pictures. That's more than just what we might call mere nudity. I mean, this wasn't – if the affiant had described what we would commonly call like a baby's first bath kind of picture, I think then it would be a different question. But here he's describing something in which the generals seem to be, if not the focal point of the picture, at least clearly apparent in the picture and on display. But he wouldn't have used the word display if for whatever reason he didn't mean it. But the point is we're looking way beyond the face of the affidavit, or at least I feel the trial court looked beyond the face of the affidavit. The trial court said if they were so upsetting, he would have walked out of the house and called 911. And the trial court said, well, if you didn't do that, then they're not child pornography. That, I believe, is incorrect, at least insofar as it bears a proper cause analysis. Well, is there anything in this affidavit of either the detective who has a history in this particular task force or in Mr. Grundy that indicates where the setting in which the photos are taken, the circumstances in which the photos are taken, and specifically I'm looking now at I think it's the Knebel case where the child is apparently on a bed. There are stuffed animals and a pillow around the child. She's propped up on her elbows. Respectfully, Your Honor, the difference between a case like Knebel or Hebel or the instant case is that those are reasonable doubt cases following a trial. There, the pictures have been brought before a court. The fact finder is able to make the determination that they are, in fact, child pornography. Here, we have merely a search warrant affidavit. And the question is whether or not it's more likely true than, or actually, apparently, according to our Supreme Court, it doesn't even need to be more likely true than not. The question is whether or not interpreted in a reasonable, common-sense manner, somebody reviewing the warrant could determine that there's evidence of the crime in the location to be searched. If here the crime is child pornography, then a picture of a child displaying their genitals certainly satisfies the belief that there might be evidence of that crime in the defendant's home. I would submit, though, that regardless of how this court answers the question of probable cause, the good-faith exception question is nowhere near as ambiguous. The good-faith exception application in this case is undoubtedly clear. The trial court judge mistakenly overlooked the decision of the issuing judge. The issuing judge had an opportunity to examine the affidavit in this case. He could ask the questions that you yourself just asked me a little while ago regarding the details of the affidavit. We don't know, of course, because usually these ex parte affidavit proceedings aren't transcribed. But the point is the issuing judge, Judge Marchese, had the affidavit in front of him and made a determination regarding his credibility. The trial court judge in this case ignored that determination, found the affidavit not to be credible. The trial court judge couched it in terms of whether or not there was a reasonable belief in terms of the evidence of the offense. But importantly, the trial court judge made a credibility determination regarding the affidavit. There was no Frank's motion filed in this case. The affidavit never appeared in front of the trial court. Well, she didn't say he wasn't telling the truth. She just wondered what the words display and something else. Well, she did say, for example, if he was so upset he would have walked out of the house. If he was so upset, if this were truly child pornography, he would have walked out of the house and called 911. And then she used that language to defeat the application of the good faith exception in Leon. It's like in her belief that there are no reasonable circumstances under which any law enforcement official could rely on this affidavit. That's not what the third exception is in Leon. I mean, it is plainly that, but it's not meant to apply to these types of situations. It is plainly that, but it's not meant to apply to these situations? Okay. The third exception in Leon is designed to apply to an affidavit that is so lacking in initiative probable cause as to render official belief in its existence entirely unreasonable. The third exception in Leon has often been applied to cases in which there's a conclusory statement in the search warrant affidavit. I was upset. Is that a conclusion? I think it would be – it's a different type of conclusion than – there the affidavit is expressing how it felt. It is or it isn't? I was upset. Is that a conclusion? It's a conclusion about how the affidavit felt. Okay. Then why don't we back up and what were you upset about? Okay. To me, there's a difference, though, between a conclusion and how you feel regarding what you just saw versus whether or not evidence – whether or not a particular crime has occurred. I mean, it's the difference between subjective and objective. Here, Grundy's stating it upset me. He's stating his personal reaction versus there's child pornography in the defendant's home. That's more typically what we would call conclusory under a Fourth Amendment analysis. I mean, here he's stating a personal belief based on what the – the impact the pictures had on him. Well, didn't the trial judge really put it on a sliding scale in saying there's upset and there's upset, there's upset that I walked out the door and called 911, there's upset that I thought about it for a week, then I got a motorcycle accident, then I had to recover, and oh, yeah, by the way, and then I decided perhaps I'd call the police. Wasn't she sort of putting it on a sliding scale? Perhaps, but that – And really, isn't – there's no issue here that what the affidavit said, no one says that he's making this up. Credibility isn't the issue. The question is whether or not the complaint states sufficient probable cause. Not the truth of it, but even assuming everything in it is true, is that enough? I would submit with respect to the probable cause issue, it absolutely is. In respect to the good faith exception issue, the fact that we're having this argument right now shows that belief in the existence of probable cause isn't entirely unreasonable. Somebody could look at this search warrant affidavit and conclude that there is child pornography in this person's home, based on the fact that he uses the word displaying breasts and vaginas regarding young children and that the affiant is upset, that it has an impact on him. That doesn't render official belief in the existence of probable cause entirely unreasonable, such that the warrant is so deficient that no officer could ever rely on it. I mean, what if the officer is – if the officer obtaining the search warrant is different than the officer executing the search warrant? When the officer executing the search warrant would look at the warrant, he would at least see those two elements in there, something that perhaps you might argue doesn't sufficiently state probable cause, but it doesn't render official belief in its existence entirely unreasonable. I would submit, Your Honors, that at least the fact is, in this case, there is no allegation that these are photos that the defendant had a right to possess. The allegation is that these are exhibitions of young children. There is no obscenity standard applicable here, and the question for whether or not this is child pornography is a determination to be made by the trier of fact. Whether or not there is sufficient probable cause in this affidavit is spelled out by two key facts. The fact that the affiant used the term displaying with respect to these young children and the fact that it had an impact on him. If it didn't have an impact on him, it likely wouldn't be child pornography. All that being said, once the search warrant was signed by the issuing judge, the officers had an unquestionably reasonable belief in relying on the issuing judge's signature of the search warrant. For those reasons, I would submit that there was not only probable cause in this affidavit, but that officers appropriately executed it in accordance with the good faith exception. Thank you. Good morning. May it please the court, counsel, judge and judges. Basically what this entire case boils down to is two issues. One is, does probable cause exist for a search for child pornography when there is no allegation of lewdness involved in the probable cause affidavits? And if there is no probable cause, can a 15-year veteran of the Internet, Illinois Attorney General, Internet Crimes Against Children Task Force Officer, and Assistant State's Attorney, reasonably believe, given their training and experience, that an affidavit lacking any sort of allegation of lewdness is sufficient under the law? In this particular instance, there is absolutely no allegation of lewdness contained within the search warrant. You talk about the use of the word display because the whole argument is contextually, to a certain degree, display and perhaps some type of emotion, mental emotion, I think. But focus on the display part of this. Sure. Naked children by definition display genitals. And one of the primary problems with this particular affidavit is there is absolutely no context for what that display means. Display could come up in any number. Like, for instance, a picture of a naked children doing nothing, you know, is still technically displaying genitals. In the instance of, like, a medical record. Let's say a child spills hot coffee in his lap and injures his genitals and has medical pictures of that for the purposes of medical treatment. Technically, that picture is a child displaying their genitals, and that is not a pornographic image. In this particular case, there's no context provided by the affiant or the officers to what this display was. None. The officer in this particular case could have solved this issue quite easily by simply asking the affiant in this case, Mr. Grundy, well, what exactly did you mean by display? What was the context of these pictures? I don't mean to say quite easily. Just stick to the issue of facts. It's not whether or not the officer could have or the affiant could have. What did he do? He didn't do anything in this case. I mean, in this case, the officer didn't ask any additional questions to get context. There's no additional information that was brought before Judge Marchese, the issuing magistrate in this instance, to let him make that determination of probable cause. Now, the state mentions that the affiant, Mr. Grundy, was brought before the magistrate in this particular instance, but there's nothing in the record that he was actually questioned. The only thing in the record is that Judge Marchese signed off on the affidavit in this part, you know, essentially notarizing Mr. Grundy's signature. There's no evidence here that anything other than what was in the search warrant was presented to Judge Marchese. And the evidence in the search warrant is just insufficient and the allegations are insufficient. There's no way based upon the language in the search warrant that one could jump to the conclusion of child pornography without speculating as to what was going on in those pictures. There was no pictures brought before the judge in this instance. There was no, you know, further testimony from Mr. Grundy as to what he saw. There's just no way that a determination of probable cause could be made just on these facts, especially given in this particular context, these pictures could have been any one of a number of different constitutionally protected pictures. I mentioned medical records, but, you know, we can also talk about, you know, keepsakes that the child court brought up of, say, child frothing through a sprinkler. Or, you know, in this particular instance, it could be health books that a minor might look through. We don't know. That context was never provided to the lower court in this instance. Mr. Grundy is there to deal with some viruses that Mr. Siegel thinks have now somehow impacted his computer. And he says that he goes to the documents file and is looking for maybe where the viruses came from. He opens one picture, he opens another picture, he opens a third picture. And then, according to the affidavit, Mr. Siegel arrives someplace in that time. Do we place any significance on the fact, or should we, that he opened three pictures and that's what upset him, or was he just doing his job? Well, under the circumstances, I mean, there's a couple of things I'd have the court consider. I mean, one is, just from the language of the affidavit, we can't even tell if there's more than two different girls involved in these pictures. I mean, he mentions that there's two girls in one picture and then two other pictures of a single girl. But he never made a differentiation between whether these were different girls or not. You know, he never really described, you know, what those pictures were or what context they were. I mean, the fact that he was in there doing computer work, I mean, I would say that would give him even more of a motivation to go report, because in Illinois, a computer technician is staffed for a required report of child pornography fines. And in this instance, the computer technician waited three weeks to go and do anything about it. So, I mean, if the court was going to place any significance on that fact, that would be what I'd say the significance of that is. I mean, in the context of probable cause here, the fact that he was doing computer repair work and he found it on the computer, I don't think means anything. I mean, parents in this day and age, most people keep digital photos on their computer. So, I mean, it's not unreasonable for a parent, in this instance, as a picture of a child, say, No further context as to where these pictures came from or who the minor was or what the minor was doing. I mean, we have nothing in here about the minor being in any sort of particular pose or what the expression was on the minor's face or what the minor was doing. And I could, you know, like I was saying a second ago, I mean, this could very well be a minor displaying genitals for medical purposes. We just don't know, because the officer in this case didn't bother to question the client about what he actually saw. You know, on that basis, I mean, I just can't see probable cause coming out of this. There's just not enough information there. And what the state's position is today is that allegations of lewdness are not required to find probable cause for child pornography. If the appellate court were today, were to rule in favor of the state, essentially would open the doors for unlawful searches of medical offices, parents that keep keepsakes of their children, minors that possess medical records of themselves that have pictures of them displaying genitals. You know, if a personal injury lawyer is representing someone that dumped hot coffee in their lap and it's a minor and there's pictures of genitals there, well, you know, if someone were to see that and get upset about it, that would bring probable cause into the state standard. I mean, there's just no clear line in this instance. Does the number of files have any contextual aspect of lewdness? Well, the state cites a case in this from the Eastern District of Texas called Gov. 3, where they talk about probable cause being found under federal law regarding several hundred images found of minors of different ages. In this particular instance, all we have is three photographs. And I would submit that if the court did find the number of photos to be relevant in this particular case, that would be something beyond the kind of what a normal person might actually possess. In this particular instance, there's only three photographs referenced. One photo is a nude girl, a picture of a nude girl about six, displaying her breast and vagina. The second photo is, again, a young girl displaying her breast and vagina. The third file, there are two girls, young, displaying their breast and vagina. In addition to the number of files, would the fact of how the defendant handled himself when he returned to the home be part of the context, a sense of guilt? When he returned home, to preface it, the defendant called the repairman to check his computer because he wanted to go and improve it or fix it. And then when the defendant arrived home, and this is in part of the affidavit. Actually, I'm sort of generalizing a little bit without actually reading it. But when he arrived home and saw that the person was working on the computer, he told him to stop and he didn't need any work on the computer. Is that part of the context or is that some type of sense of guilt? Well, I would say looking at the four corners of the search warrant in this particular instance, what Mr. Grundy preferred was that as I was working on the machine, Terrence arrived at the residence. And then it says, Terrence told me he was not having any problems with the machine any longer. He paid me for the work and I left. There is no statement in there that he actually witnessed whatever it was that Mr. Grundy was doing at that point. He came home at that point and said, you know, I'm not having any more problems. I'm going to pay for your work and go. I mean, if there's some sort of guilty mindset there, I mean, I would think it would be on the officer in this particular instance to ask, well, you know, did he walk up to you while you were working on this machine? Did he actually see what you were seeing? I mean, we don't have that information from the search warrant. The officer in this case, a 15-year veteran, decided it wasn't worth his time to ask or was grossly negligent about it. And we don't know because that information isn't here. But just from the four corners of the warrant, I mean, you can't see that he actually was aware of what was going on with the computer. And so I think it would require a speculative jump for the court to come to the conclusion that he actually was aware of what Mr. Grundy saw, what Mr. Grundy was doing, and, you know, try at that point to prevent him from seeing anything further. You know, I'm kind of turning to the good faith basis in this particular instance and part of the officer. I mean, we're talking about an officer who has 15 years of experience and is an Internet Crimes Task Force expert. I mean, he portrays himself in his affidavit as an expert in investigating these particular types of crimes. He, in addition to being an expert, went to an assistant state's attorney in DuPage County and specifically had them review the affidavit. Now, state's attorneys and law enforcement officers are charged with having a reasonable knowledge of the law. In this particular instance, that would include that child pornography requires some sort of allegation of lewdness in this particular case. And they should be held to the standard of knowledge that their training and experience gives them, which would include knowing that an allegation of lewdness is required. In this particular case, they reviewed it. They're in the position that lewdness isn't required at all and there's no authority to that particular extent and proceeded forward on that basis. And I think that's where the trial court comes from when they say that, you know, no reasonable belief in this particular affidavit is just unreasonable under the circumstances. There's just not enough there. And a 15-year veteran police officer who has experience investigating child pornography, working in tandem with an assistant state's attorney, should know that something more is required than just, I saw naked pictures of children which happened to display breast and vaginas. I mean, it takes something more than that, especially since that describes many different forms of constitutionally protected condiment. With our main time left, I'd just ask the court if they have any other questions that I haven't addressed. Questions? No. Thank you very much. Okay. I would just ask the court to affirm the trial court in this particular instance. Thank you. Justice Hutchinson, you asked a little while ago regarding what would be conclusory in a search warrant affidavit alleging child pornography. I think if the affidavit in this case, as the defendant seems to argue, had merely stated that the pictures he observed were lewd, that would also be conclusory. But yet that seems to be the allegation advanced by the defense and that seems to be the position that the trial court took. It's that a search warrant affidavit must use the magic word lewd or else we cannot infer it. I don't think he was saying that. I think counsel was inferring that something more than those four words displaying breast and vagina. It must be put in context. Okay. The context of this particular case is not limited solely to the pictures then, as Justice Bowman pointed out. The context in this particular case is precisely the four corners of the search warrant. So how the affidavit came to discover the pictures, the sequence in which he discovered them, the fact that he found three of them. The child pornography statute doesn't require solely hardcore pornography. It doesn't require pornography in a particular context. It doesn't require three pictures of pornography or even a cache of pornography. There are certain instances where your family's memorable keepsakes could be child pornography in somebody else's hands. Same thing goes with medical records, even medical textbooks, pictures used in a lawsuit. The point is, very simply, that in this particular case the affidavit used the appropriate language. He said that the pictures that he saw were of young children displaying their breasts and vaginas, not displaying their arms or their legs or their feet, but displaying their genitals. That is, simply put, even if it's the softest core of child pornography, it's still child pornography. At the very least, it's probable cause to believe that there's child pornography in the defendant's possession. Now, as Justice Bowman pointed out, too, you could reasonably infer consciousness of guilt from the defendant's acts in this particular case, just from the four corners of the affidavit. If one wanted to challenge the affiant's account of the version of events, the defense could have filed a Franks motion, hailed the affiant into court, and questioned him before the trial court judge, where the trial court could have made a credibility determination. Now, the issue regarding whether or not Grundy was obligated to immediately report child pornography is belied by the fact that a week after this particular incident, Grundy was in a motorcycle accident and reported it two weeks later. We don't know the extent of Grundy's injuries, of course, but I think it's reasonable to assume from this particular affidavit, under these particular circumstances, that there are elements taken in tandem. You have the fact that the affiant used the word displaying breasts and vaginas, and what was being displayed. You have the fact that the affiant was at least bothered by this enough to report it to law enforcement authorities, and for a man with a checkered past, for him to engage law enforcement on his own, I think, certainly speaks volumes about his character. You also have the fact that the affiant was in an accident a week afterwards, and that might, of course, explain the delay in his report to authorities. But you have, most importantly of all, the fact that once the search warrant was signed, officers had every right to reasonably rely on it. There's no bad faith in this case, and there's nothing in the record to show otherwise. That very simply dictates the application of the good faith exception. It's the reason why the Supreme Court basically enunciated that exception in 1984. The criminal shouldn't go free even when the constable blunders. And in this case, I would put to this court that the constable hasn't blundered, that the affidavit is sufficient, that the trial court erred in its analysis, and this court should overturn the judgment of the circuit court. Would it mean more if he opened one picture and said, it upset me? Then I opened three pictures and I was upset? I think that it's three rather than one is certainly significant. I mean, it's the difference between saying I saw a small amount of cocaine or what I believe to be cocaine versus a large amount of cocaine. It certainly dictates the likelihood that there is something illicit going on. I believe that it does militate towards probable cause. But the underlying point is that even if this court were to afford some innocent construction to the defendant's possession of those pictures, the issuing judge had every right to believe that there was probable cause to search the defendant's residence. And the officers had every right to execute the warrant once it was signed by the issuing magistrate. Are there any other questions from the court? No. Thank you. Thank you very much.